IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:15CR415 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| MARCUS BUTLER, | ) | SENTENCING MEMORANDUM |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by and through its attorneys, Carole S. Rendon, United States Attorney, and Om M. Kakani and Matthew B. Kall, Assistant U.S. Attorneys, and files this Sentencing Memorandum.

I.  **FACTUAL BACKGROUND**

The factual basis set forth in Defendant's plea colloquy and in his presentence report (PSR) accurately summarizes his conduct. However, the government hereby summarizes the relevant portions of his actions for the purposes of this sentencing memorandum.

Defendant Marcus Butler is a college-educated engineer. He pled guilty to 61 counts of making false statements to a government agency in violation of Title 18, United States Code, Section 1001(a)(2). All of these counts arise from his decision to defraud the Department of Housing and Urban Development, the Department of Labor, the Cuyahoga Metropolitan

Housing Authority (CMHA), general contractors who retained the services of his company, LB Electric, and his own employees.  Defendant operated LB Electric in the Cleveland metropolitan area from at least 2011 through 2013.  LB Electric provided electrical subcontracting services to general contractors in Cuyahoga County, and elsewhere.  Defendant used LB Electric to obtain subcontracts with two contractors, who in turn were providing general contracting services to CMHA on federally funded housing projects at the Riverside Park, Delaney Village and Union Square properties.  Butler's involvement with these CMHA construction projects took place during the following time periods:

>Delaney Village – Approximately August 2011 through December 2011.

>Riverside Park – Approximately August 2011 through January 2012.

>Union Square – Approximately May 2013 through October 2013.

These construction projects used federal funds provided by HUD in excess of $2,000 on public buildings and works.  Therefore, the provisions of the Davis-Bacon Act, Title 7, U.S.C. § 3142, *et. seq.*, required that any laborers and mechanics, to include electricians and other skilled workers, working on those projects be paid "prevailing wages," consistent with regulations set forth by the U.S. Secretary of Labor.  Further, under Davis-Bacon and its enacting regulations, LB Electric was required to provide certified, weekly payrolls to prove that their skilled laborers were actually paid prevailing wages.  Under the provisions of his contracts with the general contractors on the CMHA projects, Butler acknowledged that he had to pay prevailing wages to his employees on the CMHA projects, and he was further required to submit certified payroll sheets on a weekly basis to verify that he in fact paid his employees the prevailing wages.  See Exhibit A (Delaney Village); Exhibit B (Riverside Park); Exhibit C (Union Square).  As a part of

his contracts, Butler was also given sample Department of Labor Forms WH-347 ("the 347 forms") to certify his weekly payrolls.

The 347 forms are standard forms created and provided by the U.S. Department of Labor, and are readily accessible to the public. A sample form is shown below:

(available at https://www.dol.gov/whd/forms/wh347.pdf, accessed January 6, 2017). These standard forms simply ask the filer to identify and certify the following information on a weekly basis:

> Box 1 – the employee;
> Box 2 – the number of exemptions for that employee;
> Box 3 – the employee's work classification (i.e., his trade);
> Box 4 – dates and hours the employee worked, to include overtime and regular hours;
> Box 5 – the total hours worked;
> Box 6 – the rate of pay;
> Box 7 – the gross amount the filer paid the employee;
> Box 8 – deductions taken out of the pay to the employee, to include FICA and withholdings; and
> Box 9 – the net wages paid to the employee for that week.

The reverse of the 347 form contained a section requiring the filer to certify that the information provided was truthful and provided warnings that note the criminal consequences of willfully making false statements on the form as follows:

| NAME AND TITLE | SIGNATURE |
|---|---|
| | |

THE WILLFUL FALSIFICATION OF ANY OF THE ABOVE STATEMENTS MAY SUBJECT THE CONTRACTOR OR SUBCONTRACTOR TO CIVIL OR CRIMINAL PROSECUTION. SEE SECTION 1001 OF TITLE 18 AND SECTION 231 OF TITLE 31 OF THE UNITED STATES CODE.

Rather than pay his employees, many of whom were African-American or African immigrants, their deserved wages, Butler falsely told them that they were not working on prevailing wage jobs, paid them at rates far below the prevailing wage, and falsified his payroll sheets in order to continue collecting money from the general contractors and CMHA. In falsifying his payroll sheets, Butler submitted multiple 347 forms, in which he falsely claimed that his employees were paid the then-prevailing wages, when in fact, he gave them far less than their entitled pay. Over the course of the three CMHA projects, Butler falsely overstated the wages he paid to his employees in excess of $126,000, causing CMHA and the general contractors to pay him in return for wages his employees never received.

Butler's criminal conduct was uncovered when employees complained to CMHA and the general contractors that they were not paid prevailing wages. CMHA began an investigation into Butler's false statements, which the federal Departments of Housing and Urban Development and Labor later took over. Butler attempted to obstruct the investigation in multiple ways. He approached two separate employees, J.T. and W.W., both of whom had received wages below those reported and certified by Butler on his 347 forms, and attempted to have them lie and sign false affidavits claiming that they had been properly paid prevailing wages. Butler also submitted false paperwork to CMHA compliance official Carmen Epps in support of his falsified 347 forms. This false paperwork included a spreadsheet that Butler first claimed was an automated clearinghouse printout from his payroll company, and later stated was a QuickBooks ledger showing that he had paid his employees in accordance with his falsely certified 347 forms.

4

The spreadsheet in fact was from neither a payroll company, as Butler did not employ such a service, nor was it from a QuickBooks ledger as it was not in a QuickBooks format. In reality, it was a tailor-made spreadsheet designed to mimic the information Butler provided in his 347 forms. No matter the format of the spreadsheet, its contents were made from whole cloth, as it had no basis with his actual financial records or the wages he actually paid his employees.

As a result of Defendant's actions, he defrauded not only his eight employees, but also the two general contractors and CMHA out of a substantial sum of money for his personal benefit. The employees were paid at rates far below what they were entitled, and the general contractors and CMHA were forced to make restitution on Defendant's behalf because of his false statements on the 347 forms.

## II. LAW AND ARGUMENT

### A. SENTENCING LAW

The U.S. Supreme Court has held that the U.S. Sentencing Guidelines are "effectively advisory." United States v. Booker, 543 U.S. 220, 245 (2005). The Supreme Court advised sentencing courts that, even "[w]ithout the 'mandatory' provision, the [Sentencing Reform] Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals," specifically citing those goals listed in Title 18, U.S.C. § 3553(a). Id. at 259. Therefore, a district court must properly calculate and consider the advisory Guidelines range. See, e.g., Gall v. United States, 522 U.S. 38 (2007); United States v. Haj-Hamed, 549 F.3d 1020 (6th Cir. 2008).

In Rita v. United States, 551 U.S. 338 (2007), the Supreme Court held that courts of appeals may apply a non-binding presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines. Id. at 347. The Supreme Court further held that rather than having independent legal effect, the courts of appeals'

"reasonableness" presumption "simply recognizes the real-world circumstance that when the district judge's discretionary decision accords with the Commission's view of the appropriate application of §3553(a) in the mine run of cases, it is probable that the sentence is reasonable." Id. at 350-51.

To facilitate appellate review, the Sixth Circuit has encouraged the sentencing judge to "explicitly state [the] reasons for applying particular Guidelines, and sentencing within the recommended Guidelines range, or in the alternative, for choosing to sentence outside that range." United States v. Jones, 399 F.3d 640, 650 (6th Cir. 2005); see also Gall v. United States, 522 U.S. 38 (2007); United States v. Haj-Hamed, 549 F.3d 1020 (6th Cir. 2008).

    B.        ADVISORY GUIDELINES CALCULATION

          1.        Offense Level Calculations

Neither party has objected to the offense level calculations set forth in the Presentence Investigation Report. (R. 45, filed 12/29/2016).

              a.        Base Offense Level

Defendant is convicted of 61 Class D felonies of making false and fraudulent statements to a government agency (18 U.S.C. 1001(a)(2)). The applicable guidelines for these offenses is § 2B1.1(a)(2), which sets the base offense level at six.

              b.        Loss Amount

The loss in this matter was approximately $126,514.80. Therefore, an additional eight levels are assessed under § 2B1.1(b)(1)(E).

              c.        Number of Victims

Defendant's conduct affected in excess of ten victims, including his eight employees, the two general contractors and the CMHA. Two levels are added for this characteristic under § 2B1.1(b)(2)(A)(i).

d. <u>Role in the Offense</u>

Defendant occupied a position of trust in his relationship with his employees and the general contractors, who depended on him to pay his employees proper wages and to report those wages truthfully and accurately on the Forms 347. By abusing this special position of trust to both the employees and the general contractors and CMHA, Defendant facilitated the commission of and the concealment of the offense and an additional two levels are added pursuant to § 3B1.3.

e. <u>Obstruction of Justice</u>

Defendant on at least three occasions attempted to obstruct justice in relation to the investigation of this offense. In two instances, he separately attempted to sway and obtain false testimony from two of his employees in the form of false affidavits stating they had been paid in accordance with the false 347 forms. In the third instance, he submitted false documentation to CMHA officials in an attempt to support his fabricated certified payrolls. Accordingly, an additional two levels are added under § 3C1.1.

f. <u>Acceptance of Responsibility</u>

A defendant who clearly demonstrates acceptance of responsibility for his offense is normally entitled to a reduction in his offense level. U.S.S.G. §3E1.1(a) and Application Note 1(A). While a timely plea is considered strong evidence of acceptance, a defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right. <u>Id.</u>, Application Notes 1, 3; <u>United States v. Meacham</u>, 27 F.3d 214, 217 (6th Cir. 1994). A defendant who falsely denies or frivolously contests relevant conduct that the court determines to be true acts in a manner inconsistent with acceptance of responsibility, which may outweigh his entry of a plea. U.S.S.G. § 3E1.1, Application Notes 1, 3. A defendant may make good-faith legal objections to the PSR without endangering his credit for acceptance. <u>United States v. Smith</u>, 127 F.3d 987,

989 (11th Cir. 1997). When the defendant raises frivolous legal arguments or makes false factual objections, however, he may appropriately be denied an adjustment under § 3E1.1. United States v. Reed, 788 F.3d 231, 234 (6th Cir. 2015).

    Defendant flirts with this dividing line by putting forth two faces for the Court. On one hand, he pled guilty to the offense and it appears that he has superficially accepted responsibility for his role in the criminal offense. However, his three-page statement attached to the final presentence report clearly attempts to minimize the extent and nature of his criminal conduct. (R. 45-1: Butler Stmt., PageID 249). While Butler does appear to make a barebones acceptance of responsibility for his actions, he neither expresses remorse nor fully embraces the concept of his overarching conduct. Instead, he blames his victims, both the general contractor and his employees, for putting him in this position by urging him make an artificially low bid on the Riverside Family project and for shoddy workmanship. (Id., PageID 250).

    Defendant then, improbably, claims:

> The payroll reports were completed incorrectly and that is my fault. I had not ever completed payroll reports and wasn't entirely sure about how to complete them so I did the best I could. I was instructed to make hours reported match the sign-in sheets so that's what I did. I understand that the reports look like I defrauded CMHA with the intent of making a bunch of money for myself but that is just not the case …. It wasn't until we received violations from CMHA that I understood that something was wrong, but even at that point, I had no realization that I could be facing a criminal prosecution. We didn't skim any money off the prevailing wages and we were upfront with our subcontractors

(Id.). This statement does not comport with a sincere expression of acceptance, but rather appears to be an improper rationalization of Defendant's criminal conduct. Defendant is a college graduate, educated and trained in engineering and construction contracting and was employed with a prominent contractor in Arizona prior to this conduct. For him to say that the 347 form was somehow too complex for him to figure out is absurd. All that the form requires is

8

for him to truthfully report not only the hours his employees worked, but also to correctly report their rates of pay, honestly record their withholdings, and accurately reflect their total wages. Nowhere on the form does it indicate that he must report what he should have paid the employees. Instead, it requests that he accurately record what he actually paid them. As shown above, the form is not complicated – rather it is designed to be easily accessible to the general public and simply requires the application of straightforward math based upon honest figures. Defendant did not make minor mistakes in the forms because they were difficult to comprehend. Rather, he made gapingly inaccurate statements to cover his double-dealing with his employees and the general contractors. His 61 false 347 forms caused over $126,000 in loss by over-reporting the wages he paid his employees – averaging to over $2,000 in inaccuracies per form submitted.

      Defendant also now frivolously claims that he did not realize at the time he submitted the forms that he did not understand "something was wrong [or that he] could be facing criminal prosecution." (Id., PageID 250). This statement lies in direct opposition to his plea to *willfully* making false statements to the government in violation of 18 U.S.C. § 1001, and also to the fact that on at least 61 occasions he signed and certified a 347 form with an explicit warning that making false representations on the form was a criminal act.

      Defendant goes on to claim that the Davis-Bacon Act, which governed the prevailing wages requirements of the CMHA contracts, was a racially discriminatory law in an attempt to further justify and rationalize his conduct. (Id., PageID 250-51). By his admission, however, this was not an understanding he obtained prior to violating the law but only after "this issue began to escalate." (Id., PageID 250). Defendant's later research into the origins of the Davis-Bacon Act does not serve to mitigate his earlier willful efforts to evade its requirements.

9

Additionally, the origins of the Davis-Bacon Act have no real import on Defendant's criminal conduct, that is, the violation of 18 U.S.C. §1001(a)(2).  Moreover, while claiming that the Davis-Bacon Act is racially discriminatory against minority workers, Defendant ignores that many of his own victim employees were in fact low-income minority workers.  These are the same people he defrauded by not paying them prevailing wages while lying to them, the general contractors and CMHA about it.

Finally, while he may rationalize his conduct as just, and his intent as "very noble," Butler's conduct does not amount to civil disobedience.  Rather, he committed a criminal act by falsifying the rates of pay to his employees that he reported on the 347 forms and keeping the difference for himself.  Simply put, his intentions were not inspired by his later acquired perception of the Davis-Bacon Act's origins but rather on his access to money destined to his own low-income and minority skilled laborer employees, and his decision to defraud them, the general contractors and CMHA.

Butler's contradictory and frivolous denial of his conduct may warrant a denial of credit under § 3E1.1(a).  However, the United States will reserve final judgment on whether to recommend a two-level adjustment for acceptance of responsibility until after hearing Defendant's colloquy, to see if he continues making frivolous denials of his conduct and other improper rationalizations.[1]

Additionally, while Defendant did plead guilty prior to a trial in this matter, he did not inform the government of his intent to plead guilty until the date of the Final Pretrial.  In

---

[1] The initial presentence report did not recommend any downward adjustment for acceptance of responsibility. (R. 43, PageID 215).  The government therefore did not have an opportunity to object to the adjustment for acceptance which was first included in the final PSR.

addition, he failed to attend a previous Final Pretrial, an arrest warrant was issued and he was later arrested in Houston, Texas, and he was being transferred to the district shortly before the trial was scheduled.  Due to Defendant's conduct, the government was forced to complete substantially all of its trial preparation.  Based on Defendant's conduct, the government was unable to allocate its resources efficiently, and even if this Court grants him a two-level reduction for acceptance of responsibility, the government will not make a motion to further decrease the offense level under U.S.S.G. § 3E1.1(b).

      g.      Total Offense Level

Assuming this Court agrees with the Probation Department and government's calculation, and further credits Defendant for sincerely accepting responsibility, the offense level is calculated as follows:

| | | |
|---|---|---|
| Base Offense Level | 6 | § 2B1.1(a)(2) |
| Loss $126,514.80 | +8 | § 2B1.1(b)(1)(E) |
| More than 10 Victims | +2 | § 2B1.1(b)(2)(A)(i) |
| Abuse of Position of Trust | +2 | § 3B1.3 |
| Obstruction of Justice | +2 | § 3C1.1 |
| Acceptance of Responsibility | -2 | § 3E1.1(a) |
| **Final Adjusted Offense Level** | **18** | |

      2.      Criminal History Category

Defendant has no qualifying convictions and his Criminal History Category is I.

      3.      Advisory Guidelines Range

Defendant's advisory guidelines range, prior to departures, is based on offense level 18 and criminal history category I.  Therefore, the guidelines recommend a 27-33 month imprisonment term.

    4.  <u>Departures</u>

No grounds for a downward departure exist in this matter. Neither side has notified the Probation Department that it intends to seek a departure, and the Probation Department has not identified any grounds for departure.

  C.  <u>THE SECTION 3553(A) FACTORS</u>

Title 18, United States Code, Section 3553(a) states, in pertinent part:

(a) Factors To Be Considered in Imposing a Sentence — The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

  (3) the kinds of sentences available;

  (4) the … sentencing range…;

  (5) any pertinent policy statement…;

  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

  (7) the need to provide restitution to any victims of the offense.

The properly calculated Guidelines are the starting point and initial benchmark at all sentencing proceedings. Gall v. United States, 552 U.S. 38 (2007); United States v. Peebles, 624 F.3d 344 (6th Cir. 2010); United States v. Petrus, 588 F.3d 347 (6th Cir. 2009).

1. The nature and circumstances of the offense

The nature and circumstances of the offense are described in detail in the Factual Background section of this Sentencing Memorandum. The offenses charged are non-violent offenses and would otherwise warrant a low-end guidelines range sentence. However, based upon his blatant disregard for telling the truth in the 347 forms, his benefit in retaining the difference between what he actually paid his employees and what he claimed to have paid them on the 347 forms, and his conduct in attempting to conceal his crimes, the government submits that Defendant should receive a high-end guidelines range sentence to properly reflect the severity of his offense conduct. Accordingly, the government submits that a mid-range guidelines sentence will properly reflect the non-violent nature of the offenses while also acknowledging the egregious circumstances attending their commission.

2. Defendant's personal history and characteristics.

Defendant's personal history and characteristics are set forth in paragraphs 45-64 of the presentence report. The government notes that Defendant is a college-educated engineer and, aside from the conduct at hand, has no criminal history. Defendant reports no history of substance abuse or violent behavior. Butler has maintained and attempted to maintain a positive work history since graduating from college. He is an active member in a service-oriented fraternity and mentors his nephew. Defendant also has a good relationship with his family, including his daughter. These factors warrant a sentence at the lower-end of the applicable guidelines range.

      3.    <u>The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and The need to afford adequate deterrence to criminal conduct.</u>

Defendant's conduct during the commission of the offense and in his attempt to conceal his transgressions show an utter lack of respect for the law.  On not one or two occasions, but 61 different times, Defendant falsified the rate of pay and wage information on the certified 347 forms.  In each of these forms, he falsely stated that he paid his employees at rates of pay far in excess of what they actually received, and did so in a glaring fashion and with open eyes in violation of 18 U.S.C. § 1001, even in spite of a clear admonishment of the consequences.  Defendant then, after being caught, compounded his error by attempting to improperly sway witnesses and provide fabricated documentation to conceal his offenses.  Defendant's ongoing disrespect for the laws he violated, and the way in which he did so and covered it up, is further apparent in his backwards-looking justification for doing so by casting blame upon the Davis-Bacon Act when he should instead castigate himself for defrauding his employees, the general contractors and CMHA.   To promote respect for the law and provide just punishment for his conduct, the Court should impose a high-end guidelines-range sentence in this matter.

      4.    <u>The need to protect the public from further crimes of the defendant.</u>

As his conduct demonstrates, Butler was able to use his position of trust with both the general contractors and his employees to victimize them both, and he did so over the span of several years without detection.  The temptation to derive illegal profit from and victimize his employees, the very low-income minority skilled workers that he claims are discriminated against by the Davis-Bacon Act, by willfully lying on 347 forms is countered only by the threat of prosecution and punishment.  Similar conduct will continue to be lucrative to unscrupulous contractors, at their employee's expense, as long as the potential rewards outweigh the penalties.  Only a lengthy sentence of incarceration will serve to moderate the incentive for this illegal

conduct. Moreover, because economic and fraud-based crimes, and those involving affirmative acts of deceit such as this one, are more rational, cool, and calculated than sudden crimes of passion or opportunity, they are prime candidates for general deterrence. United States v. Musgrave, 761 F.3d 602, 606-07 (6th Cir. 2014). However, Defendant's conduct, while protracted over several years and on at least three separate projects, appears to be somewhat isolated and does not mark the pattern of a repeat offender. Defendant, as a result of his convictions, is also less likely to be in a similar situation to receive or administer government-funded contracts. Given these aggravating and mitigating factors, a fair but firm sentence in the middle of the guidelines-range will provide a proper deterrent effect for both Defendant and other similarly inclined contractors.

       5.       <u>The need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

The government believes that the sentence imposed, the programs available to defendant while incarcerated, and the programs that will be made available after release will be sufficient to address these needs.

    D.    <u>RESTITUTION</u>

As the PSR notes, restitution in this case should be made to the following in the amounts listed below:

    1.    Erie Affiliates - $27,141.11;

    2.    Fiorilli Construction - $78,283.60; and

    3.    CMHA - $21,090.43.

Neither party has objected to these sums or their distribution. (See R. 45: PSR, PageID 246, 248). Accordingly, the government requests that this Court order Defendant, pursuant to 18

U.S.C. § 3663A, to make restitution as outlined due and payable in full immediately upon sentencing.

E.     SPECIAL ASSESSMENTS

Defendant has pled guilty to 61 separate felony offenses. Accordingly, the Court is required, under Title 18, U.S.C. §§ 3013 and 3611, to assess him $100 per convicted count to be paid immediately upon sentence. Due to Defendant's offenses, he will be required to make $6,100 in special assessment payments to the United States, separate and apart from any criminal fine, restitution or term of imprisonment or probation that may be imposed in this case.

III.    CONCLUSION

For the foregoing reasons, the government requests that this Court sentence Defendant Butler at the low-to-middle range of the applicable guidelines range, and that be ordered to make restitution as outlined above due and payable immediately upon sentencing.

Respectfully Submitted,

CAROLE S. RENDON
United States Attorney

/s/ Om Kakani
Om Kakani (NY: 4337705)
Assistant U.S. Attorney
Om.Kakani@usdoj.gov

/s/ Matthew B. Kall
Matthew B. Kall (NY: 3003738)
Assistant U.S. Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3600
(216) 522-8355 (facsimile)
Matthew.B.Kall@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2017, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ Om Kakani
Om Kakani
Assistant U.S. Attorney